## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RADIANT IMAGES, INC, | : | |
| and GIANNA WOLFE | : | |
| Plaintiffs, | : | 1:18-cv-01492 (LAK) |
| | : | |
| v. | : | |
| | : | |
| COMPLETE BUSINESS SOLUTIONS | : | |
| GROUP, INC.,  BROADWAY ADVANCE | : | |
| FUNDING, LLC, JOHN and JANE DOE | : | |
| INVESTORS | : | |
| Defendants, | : | |

---

### DEFENDANTS, COMPLETE BUSINESS SOLUTIONS GROUP, INC., BROADWAY ADVANCE FUNDING, LLC, JOHN and JANE DOE INVESTORS' JOINT MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(b) 6

---

By: Norman M. Valz, Esq.– Attorney for Movants
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT…………………………………………………..1

I.   INTRODUCTION .................................................................................... 2

II.  FACTUAL BACKGROUND ................................................................... 3

    A.   Procedural History……………………………………………………3

    B.   Facts Alleged in Plaintiffs' Complaint…………………………...…….4

III. ARGUMENT ............................................................................................ 6

    A.   Standard of Review .................................................................. 6

    B.   California Law Inapplicable to Plaintiffs' Alleged Causes of Action ................... 7

    C.   Complaint's General Failure to State a Cause of Action, Fed. R. Civ. P. 9(b)…...10

    D.   Equitable Claims Plaintiffs Mislabelled as "Contract"…………………….…..10

    E.   Plaintiffs Fail to State any RICO Claims………………………………….…...11

        1.   Elements of Civil RICO ……………………………………………….13

        2.   Plaintiffs Has Not Alleged Any RICO Enterprise………………………14

        3.   Plaintiffs Has Not Alleged Any Criminal Predicate Acts........................ 16

        4.   Plaintiffs Cannot Establish Damages……………………………..…….18

    F.   Plaintiffs Fail to State a Claim for Negligent Misrepresentation………………19

IV.  CONCLUSION.................................................................... ………. . 19

i

# TABLE OF AUTHORITIES

CASES                                                                               PAGE

*Agency Holding Corp. v. Malley Duff & Assoc., Inc.*,
  483 U.S. 143 (1987)..................................................................................................13

*Annulli v. Panikkar*,
  200 F.3d 189 (3d Cir. 1999) .....................................................................................16

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ............................................................................................18,19

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009)…………………………………………..….7

*Banjo Builders, Inc. v. Renosky*,
  399 F.3d 168, 179 n.10 (3d Cir. 2005))…………………………..………….11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)…………………………………………………………...…6

*Berk v. J.P. Morgan Chase Bank, N.A.*,
  2011 WL 4467746 (E.D. Pa. Sep. 26, 2011) ...........................................................19

*Bonavitacola Elec. Contr., Inc. v. Boro Dev., Inc.*,
  87 Fed. Appx. 227 (3d Cir. 2003)...........................................................................13

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater New York*,
  2009 WL 928718 (E.D.N.Y., March 31, 2009) ........................................................12

*Business Incentives Co., Inc. v. Sony Corp. of America* ,
  397 F.Supp. 63, 67 (S.D.N.Y. 1975)…………………………………………….8

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel* ,
  346 F.3d 360, 365 (2d Cir. 2003)………………………………………………..8

*Chevron Corp. v. Donziger*,
  974 F. Supp.2d 362, 601 (S.D.N.Y. 2014)……………………………………….18

*City of New York v. Smokes-Spirits.Com, Inc.*,
  541 F.3d 425, 446 (2d Cir. 2008)…………………………………..……...……13

*Emcore Corp. v. PricewaterhouseCoopers LLP*,
  102 F. Supp. 2d 237 (D.N.J. 2000)..................................................……...14

*Evercrete Corp. v. H Cap, Ltd.*,
  429 F.Supp.2d 612 (S.D.N.Y. 2006)…………………………………………….12

ii

*First Sur. Fin., LLC v. Taylor Assocs. LP*,
   2015 Pa. Super. Unpub. LEXIS 3614 (Pa. Super. Ct. 2015) ……………………………….7

*Goldfine v. Sichenzia*,
   118 F.Supp.2d 392 (S.D.N.Y. 2000)…………………………………….……….…12, 17

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
   230 F.3d 549, 556 (2d Cir. 2000)……………………………………………...…….8

*Hemi Group, LLC v. City of New York*,
   130 S. Ct. 983 (2010)…………………………………………………………….......13

*H. J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989)…………………………………………………………………14

*In re Mastercard Int'l, Inc.*,
   132 F. Supp. 2d. 468 (E.D. La. 2001)………………………………….…………16

*In re Initial Pub. Offering Sec. Litig.*,
   383 F.Supp.2d 566, 574 (S.D.N.Y.2005)………………………………………….6

*Jubelirer v. Mastercard Int'l, Inc.*,
   68 F. Supp. 2d 1049 (W.D. Wisc. 1999)…………………………………...16

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996)……………………………..……………..12

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
   926 F.2d 1406 (3d Cir. 1991)………………………………………………...15

*Kirk v. Heppt*,
   423 F.Supp.2d 147 (S.D.N.Y. 2006)…………………………………….……12

*Kolar v. Preferred Real Estate Investments, Inc.*,
   2008 WL 2552860 (E.D. Pa. June 19, 2008) …………………………….………..14,15

*LaFaro v. New York Cardiothoracic Grp., PLLC*,
   570 F.3d 471, 475 (2d Cir. 2009))………………………………………………….7

*Lightning Lube v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ................................................................. 14

*Livingston v. Shore Slurry Seal, Inc.*,
   98 F.Supp.2d 594 (D.N.J. 2000).......................................................... 17

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004)..................................................................13,17

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000) ...................................................................................6,19

*Martinez v. Bloomberg LP* ,
  740 F.3d 211, 217–18 (2d. Cir. 2014)…………………………………….………10

*Meade v. Guar. Bank*,
  2013 WL 5438750 (M.D. Pa. Sept. 27, 2013) ...........................................................13

*Meeks-Owens v. FDIC*,
  2009 WL 2513616 (M.D. Pa. Aug. 13, 2009) ...........................................................18

*Merch. Cash & Capital, LLC v. Jang Hwan Ko*,
  2015 US Dist. LEXIS 80151 (SDNY 2015)…………………………………………7

*Miranda v. Ponce Fed. Bank*,
  948 F.2d 41 (1st Cir. 1991).........................................................................................12

*M/S Bremen v. Zapata Off–Shore Co*. ,
  407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)………………………………10

*Nedlloyd Lines B.V. v. Superior Court* ,
  3 Cal.4th 459, 464, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992)…………………………9

*Nichols v. Mahoney*,
  608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009)…………………………………………..12

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224, 232-34 (3d Cir. 2008)…………………………………………………7

*Phillips v. Audio Active Ltd*. ,
  494 F.3d 378, 383–384 (2d Cir. 2007)………………………………………………10

*Panthera Rail Car, LLC v. Kasgro Rail Corp*.,
  2013 WL 4500468, at *6 (W.D. Pa. Aug. 21, 2013)…………………………………11

*Principis Capital, LLC v. B2 Hospitality Servs. LLC*,
  2016 N.Y. Misc. LEXIS 2275 (Sup. Ct. N.Y. Cty. 2016)……………………………..7

*Prof'l Merch. Advance Capital, LLC v. McEaschern*,
  2015 US Dist. LEXIS 166429 (EDNY 2015)…………………………………………7

*Schifano v. Schifano*,
  324 Pa.Super. 281, 471 A.2d 839, 843 n. 5 (1984))………………………..…..…8

*Schmuck v. U.S.*,
  489 U.S. 705 (1989) ...................................................................................................16

*Schwartz v. Lawyers Title Ins. Co.*,
    2013 WL 4676704 (E.D. Pa. Aug. 30, 2013) ........................................................................15

*Schuylkill Energy Resources v. Pennsylvania Power & Light Co.*,
    113 F.3d 405, 417 (3d Cir. 1997))................................................................................6

*Sevast v. Kakouras*,
    591 Pa. 44, 53 n.7 (Pa. 2007)...................................................................................11

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
    742 F.2d 786 (3d Cir. 1984)....................................................................................18

*Shipp v. Donaher*,
    2010 WL 1257972 (E.D. Pa. Mar. 25, 2010) ........................................................................19

*Smith, Valentino & Smith, Inc. v. Superior Court* ,
    17 Cal.3d 491, 495–496, 131 Cal.Rptr. 374, 551 P.2d 1206 (1976)...............................9

*Star Creations Inv. Co., Ltd. v. Allen Amron Development, Inc.*,
    1995 WL 495126, at *12 (E.D. Pa. Aug. 18, 1995)............................................11

*Styler v. Hugo*,
    619 A.2d 347, 350 (Pa. 1993)...................................................................................11

*Terminate Control Corp. v. Horowitz,*
    28 F.3d 1335,1344 (2d Cir.1994)...............................................................................18

*TGG Ultimate Holdings, Inc., v. Hollett*,
    224 F.Supp. 3d 275 at 284 (S.D.N.Y., 2016).....................................................9

*U.S. v. Al Hedaithy*,
    392 F.3d 580 (3d Cir. 2004)......................................................................................17

*U.S. v. Frey*,
    42 F.3d 795 (3d Cir. 1994) ........................................................................................ 17

*U.S. v. Pharis*,
    298 F.3d 228 (3d Cir. 2002) ...................................................................................... 16

*U.S. ex rel. Siegel v. Roche Diagnostics Corp.*,
    988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013)...................................................7

*U.S. v. Syme*,
　　2763d 131 (3d Cir. 2002) ........................................................................ 16

*U.S. v. Turkette*,
　　452 U.S. 576 (1981) .............................................................................. 15

*Weisbach Elec. Corp. v. MasTec Am. Inc.*,
　　7 N.Y.3d 624, 859 N.E.2d 498, 500 (2006)……………………….………………..……8

*Wilkinson Co.. v. Krups N. Am., Inc.*,
　　1999 WL 33134349 (D.N.J. Nov. 16, 1999) ........................................... 17

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
　　530 F. Supp. 2d 486, 495-96 (S.D.N.Y. 2007)…………………………………………12

*Wright v. Dunn*,
　　2007 WL 869167 (E.D.Mich. March 22, 2007) ...................................... 18

*Zavala v. Wal Mart Stores, Inc.*,
　　447 F. Supp.2d 379 (D.N.J. 2006) ......................................................... 15

*Zimmer v. Gruntal & Co., Inc.*,
　　732 F. Supp. 1330 (W.D. Pa. 1989) ...................................................... 15

STATUTES

Pa.C.S.A. 41 P.S. § 201………………………………………………………….……………7

18 U.S.C. §§1341 and 1343.......................................................................... 16

18 U.S.C. § 1961(1) .................................................................................14,16

18 U.S.C. § 1961(4) ..................................................................................... 14

18 U.S.C. § 1961(5) ..................................................................................... 14

18 U.S.C. §1962(c) ………………………………………….…………….……13,14,15

18 U.S.C. §1964(c)………………………………………………………………...….13,18

OTHER AUTHORITIES

Fed. R. Civ.P. 12(b)(6)...............................................................................1,6,19

Fed.R.Civ.P. 9(b) ...................................................................................1,10,13,17

Restatement (Second) of Conflict of Laws § 187 (1971)…………………………………….……….8

## PRELMINARY STATEMENT

Defendants Complete Business Solutions Group, Inc., Broadway Advance Funding, LLC, and "Jane and John Doe Investors" (or "Movants"), by and through their undersigned counsel, submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs Radiant Images, Inc. and Gianna Wolfe's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.   Generally, the allegations of Plaintiffs' Complaint facially fail to meet the burden of Fed. R. Civ. P. 9(b).   Plaintiffs cannot show that Defendants engaged in any fraudulent, tortious or illegal acts.   Plaintiffs fashioned their Complaint, (without exhibits or more than a "sample" contract giving rise to this action or other supporting documentation).   Plaintiffs label this case as a Racketeering Influenced and Corruption Organization Act (RICO) action – even reaching to name "John and Jane Doe" Investors in Defendant companies as parties, making unsupported defamatory statements concerning people associated with the Defendants, and finally making claims that people associated with or employed by Plaintiffs vaguely suffered as a result of Defendants' action – but never identifying the individuals or moving beyond derogatory or defamatory remarks without any supporting facts or foundation.

Plaintiffs entered into no less than 17 separate, voluntary commercial agreements with Defendants over approximately a three year period of time.   There are presently outstanding, at least **$2,382,743.80** of Radiant Images receivables outstanding which were sold to the Defendants in this matter.  Plaintiff Gianna Wolfe agreed to act as Guarantor in all 17 Agreements.   Since the inception of the business relationships between Plaintiffs and Defendants, Defendants **have paid Radiant Images, Inc. more money for its receivables than they have retrieved** from its accounts receivable.   Yet somehow, Plaintiffs allege that Defendants have caused financial harm to Radiant.

Plaintiffs fail to show that Defendant engaged in any fraudulent, tortious or illegal acts.

Further, Plaintiff fail to identify any damages incurred as a result of any action by any named Defendant.  As such, his Complaint must be dismissed with prejudice.

## I.    INTRODUCTION

Plaintiffs Gianna Wolfe and the management of Radiant Images, Inc. were well versed in the concept of Merchant Cash Advances as Radiant voluntarily entered into at least seventeen separate agreements for the sales of its receivables to three different Merchant Cash Advance companies over the past three years (See Exhibits "A"-"Q" attached herewith).    These Agreements, which although not attached or correctly described with and specificity in Plaintiffs' Complaint are integral to Plaintiffs' allegations (particularly in the Complaint's Sixth Cause of Action, "Contract" [Complaint, pg. 25] ), thus these documents are properly included in this Motion to Dismiss.

Plaintiffs Wolfe and Radiant's management are very well acquainted with the concept of Merchant Cash Advances and they knowingly and willfully entered into all of the above-described transaction.   These were was not loan transactions.    These were not transactions where California law could apply (valid choice of law provisions are present in each agreement)(See Exhibit "A" – "Q" [Section 4.5 Binding Effect: Governing Law, Venue and Jurisdiction])( the CBSG and FAF contracts have Pennsylvania law applicable while the Broadway Advance agreement has New York law applicable).   These were commercial agreements between sophisticated parties.   These transactions were in no way loans or constituted lending, but instead were the purchase and sale of accounts as contemplated under Section 9 of the U.C.C.

Plaintiffs' Complaint reflects a firm and unjustified adherence to the "kitchen sink" style of pleading without exhibits, copies of the alleged contracts, or specificity of any kind.     Plaintiffs' Complaint must be dismissed because it fails to state a claim upon which relief can be granted.   In place of a cohesive factual narrative, Plaintiffs make factually unsupported statements regarding the Merchant Cash Advance industry and the vague allegations related to the Defendants' allegedly

conspiring to harm Plaintiffs through voluntary transactions wherein Movants purchased Plaintiffs' future business receivables as part of their "Merchant Cash Advance business" and their participation in the "factoring industry."

The Complaint's "Factual Background" contains no facts, but unsupported opinions and conclusions which disparage the Merchant Cash Advance industry in general and alleged that somehow, Plaintiffs were "forced" into entering these agreements.

The causes of action are similarly deficient—they provide boilerplate statements of law against "all Defendants" without any factual support.    Finally, Plaintiffs appears to be attempting to have this Complaint vaguely classified as a RICO action based largely upon alleged violations of California law, possessing a foundation for the application of California law with regard to contracts containing valid choice of law provisions (with Pennsylvania law applicable or New York law are applicable).

## II.     **FACTUAL BACKGROUND**

### A.     **Facts Alleged in Plaintiffs' Complaint**

The Complaint appears to base its allegations of malfeasance against all Defendants largely on the its vague assertions against the Merchant Cash Advance industry at large including the allegation that the MCA industry "including the Defendants, prey upon small, financially distressed businesses and lure them into advances pursuant to so-called future account receivable purchase agreements or merchant case advance agreements." (Complaint page 2, Introduction). However, the Complaint doesn't refer to the specifics of any of the Agreements between the parties, attaching only one ("Sample") Agreement.    It does not reference the dollar amount of the transactions between the parties, the damages allegedly suffered by Plaintiffs, nor the causation of any such damages.

Plaintiffs assert causes of action under the Racketeering Influenced and Corruption Organization Act (RICO) without ever defining the predicate acts which would give rise to such a

claim, or the involvements of the various companies, officers, and investors in such a scheme.

Plaintiffs allege that they were somehow induced into entering these 17 Agreements and selling

their future receivables.

Plaintiffs further allege that the results are "unconscionable" and that the transactions were

not Merchant Cash Advances, but usurious loans.    None of these serious allegations are backed

up with any factual experiences the Plaintiffs allegedly suffered at the hands of the Defendants.

Without any supporting facts, Plaintiffs allege all Movants are involved in a "common

enterprise" and have never observed corporate formalities, such that "the corporate veil should be

pierced with regard to all individual Defendants.  The Complaint contains no factual allegations

concerning how Defendants allegedly acted as a "common enterprise," failed to abide by corporate

formalities, or comingled assets and liabilities.

**B.    Facts Related to Plaintiffs' Allegations**

Radiant Images voluntarily entered into at least seventeen separate agreements for the sales

of its receivables to three different Merchant Cash Advance companies over the past three years

and Defendant Wolfe voluntarily agreed to act as guarantor for each of these Agreements (See

Exhibits "A"-"Q" attached herewith).    These Agreements, which although not attached or

correctly described with and specificity in Plaintiffs' Complaint are integral to Plaintiffs'

allegations (Particularly in the "Contract" Sixth Cause of Action [Complaint, pg. 25] ), thus these

documents are properly included in this Motion to Dismiss.    The particulars of these contracts are

as follows:

Exhibit A – November 25, 2015 Agreement between Plaintiffs and Complete Business Solutions Group,
 Inc.,(hereinafter in the alternative "CBSG") wherein Plaintiff, Radiant Images, Inc. accepted
 $120,000.00 from CBSG selling it $170,000.00 in receivables;

Exhibit B – June 7, 2016 Agreement between Plaintiffs and CBSG wherein Plaintiff,  Radiant Images,
 Inc. accepted $250,000.00 from CBSG selling it $345,000.00 in receivables;

Exhibit C – September 8, 2016 Agreement between Plaintiffs and CBSG wherein Plaintiff, Radiant

Images, Inc.  accepted $100,000.00 from CBSG selling it $135,000.00 in receivables;

Exhibit D – December 1, 2016 Agreement between Plaintiffs and CBSG wherein Plaintiff, Radiant Images, Inc.  accepted $150,000.00 from CBSG selling it $202,500.00 in receivables;

Exhibit E – January 23, 2017 Agreement between Plaintiffs and CBSG wherein Plaintiff,  Radiant Images, Inc. accepted $250,000.00 from CBSG selling it $337,500.00 in receivables;

Exhibit F – February 7, 2017 Agreement between Plaintiffs and CBSG wherein Plaintiff, Radiant Images, Inc.  accepted $150,000.00 from CBSG selling it $202,500.00 in receivables;

Exhibit G – March 28, 2017 Agreement between Plaintiffs and CBSG wherein Plaintiff,  Radiant Images, Inc. accepted $250,000.00 from CBSG selling it $337,500.00 in receivables;

Exhibit H – April 26, 2017 Agreement between Plaintiffs and Broadway Advance wherein Plaintiff, Radiant Images, Inc. accepted $250,000.00 from CBSG selling it $332,500.00 in receivables;

Exhibit I – June 29, 2017 Agreement between Plaintiffs and Broadway Advance wherein Plaintiff, Radiant Images, Inc. accepted $250,000.00 from CBSG selling it $337,500.00 in receivables;

Exhibit J – August 15, 2017 Agreement between Plaintiffs and Broadway Advance wherein Plaintiff, Radiant Images, Inc. accepted $250,000.00 from CBSG selling it $337,500.00 in receivables;

Exhibit K – September 13, 2017 Agreement between Plaintiffs and Broadway Advance wherein Plaintiff, Radiant Images, Inc. accepted $250,000.00 from CBSG selling it $337,500.00 in receivables;

Exhibit L – September 20, 2017 Agreement between Plaintiffs and Fast Advance Funding wherein Plaintiff, Radiant Images, Inc.  accepted $500,000.00 from CBSG selling it $915,947.63 in receivables;

Exhibit M –November 20, 2017 Agreement between Plaintiffs and Broadway Advance wherein Plaintiff, Radiant Images, Inc.  accepted $250,000.00 from CBSG selling it $337,500.00 in receivables;

Exhibit N – December 6, 2017 Agreement between Plaintiffs and Broadway Advance wherein Plaintiff, Radiant Images, Inc. accepted $250,000.00 from CBSG selling it $337,500.00 in receivables;

Exhibit O – December 15, 2017 Agreement between Plaintiffs and Broadway Advance wherein Plaintiff, Radiant Images, Inc.  accepted $394,450.00 from CBSG selling it $532,507.50 in receivables;

Exhibit P – January 4, 2018 Agreement between Plaintiff and Broadway Advance wherein Plaintiff, Radiant Images, Inc.   accepted $100,000.00 from CBSG selling it $135,000.00 in receivables; and

Exhibit Q – January 17, 2018, Agreement between Plaintiff and Broadway Advance wherein Plaintiff

accepted $250,000.00 from CBSG selling it $337,500.00 in receivables.

Plaintiff Wolfe and Radiant's management were well acquainted with the concept of Merchant Cash Advances and they knowingly and willfully entered into all of the above-described transactions.   These were was not loan transactions.    These were not transactions where California law could apply (valid choice of law provisions are present in each agreement)(See Exhibit "A" – "Q" [Section 4.5 Binding Effect: Governing Law, Venue and Jurisdiction])( the CBSG and FAF contracts have Pennsylvania law applicable while the Broadway Advance agreement has New York law applicable).   These were commercial agreements between sophisticated parties.   These transactions were in no way a loan, but instead was a purchase and sale of accounts as contemplated under Section 9 of the U.C.C.

**III.    ARGUMENT**

**A.    Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a Motion to Dismiss under Rule 12(b)(6) is to eliminate baseless claims and to streamline litigation by dispensing with allegations that will result in needless discovery.  *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F.Supp.2d 566, 574 (S.D.N.Y.2005)

Nevertheless, a court should not accept as true "unsupported conclusions and unwarranted inferences." Maio v. Aetna Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000) (*quoting* Schuylkill Energy Resources v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997)). "[A] Plaintiffs' obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

6

550 U.S. at 555 (citations omitted).

A complaint does not show entitlement to relief when the well-pleaded facts do not permit the court to infer more than the possibility of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); *see also* Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-34 (3d Cir. 2008). The Federal Rules "do[] not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678, 129 S. Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" U.S. ex rel. Siegel v. Roche Diagnostics Corp., 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009)).

**B.      California Law Inapplicable to Plaintiffs' Alleged Causes of Action**

Plaintiffs allege that the actions of Defendants were those of usurious lenders.   Plaintiffs make said allegations under California Law, however California law is inapplicable to any of Plaintiffs' causes of action in this matter.   In fact, Courts consistently enforce these transactions because purchases and sale of future receivables and sales proceeds are common commercial transactions expressly contemplated by the Uniform Commercial Code.   Merch. Cash & Capital, LLC v. Jang Hwan Ko, 2015 US Dist. LEXIS 80151 (SDNY 2015); Prof'l Merch. Advance Capital, LLC v. McEaschern, 2015 US Dist. LEXIS 166429 (EDNY 2015); Principis Capital, LLC v. B2 Hospitality Servs. LLC, 2016 N.Y. Misc. LEXIS 2275 (Sup. Ct. N.Y. Cty. 2016).   Further, for the sake of argument, should this Court find any of these transactions to be loans, they would not be usurious in Pennsylvania as they are all commercial transactions.   (See First Sur. Fin., LLC v. Taylor Assocs. LP, 2015 Pa. Super. Unpub. LEXIS 3614 (Pa. Super. Ct. 2015) and Pa 41 P.S. §

201.)

A basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent," and therefore courts in New York "will enforce a choice-of-law clause so long as the chosen law bears a reasonable relation to the parties or the transaction."   Weisbach Elec. Corp. v. MasTec N. Am. Inc., 7 N.Y.3d 624, 859 N.E.2d 498, 500 (2006).   The parties' choice-of-law provision will control as long as the selected state has sufficient contacts with the transaction. See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd. , 230 F.3d 549, 556 (2d Cir. 2000). But "New York law allows a court to disregard the parties' choice when 'the most significant contacts' with the matter in dispute are in another state." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel , 346 F.3d 360, 365 (2d Cir. 2003) ; see also Business Incentives Co., Inc. v. Sony Corp. of America , 397 F.Supp. 63, 67 (S.D.N.Y. 1975).

In Pennsylvania, courts will "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Id.* More specifically, Pennsylvania has adopted Section 187 of the Restatement, (Second) of Conflict of Laws, which provides that the law of the chosen state will be applied:

"unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue ...."

*Id.* (citing Schifano v. Schifano, 324 Pa.Super. 281, 471 A.2d 839, 843 n. 5 (1984)); Restatement (Second) of Conflict of Laws § 187 (1971).

In this matter, the contract of Complete Business Solutions Group, Inc. had valid choice of law provision (See Exhibit A attached herewith Section 4.10), which clearly makes Pennsylvania laws and statutes controlling.

Under California law itself, the choice of law provisions of the various factoring agreements would prevail.   Under California law, the forum selection clauses are valid. "No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." TGG Ultimate Holdings, Inc., v. Hollett, 224 F.Supp. 3d 275 at 284 (S.D.N.Y., 2016); Nedlloyd Lines B.V. v. Superior Court , 3 Cal.4th 459, 464, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992) (citing Smith, Valentino & Smith, Inc. v. Superior Court , 17 Cal.3d 491, 495–496, 131 Cal.Rptr. 374, 551 P.2d 1206 (1976) ). In Smith, Valentino & Smith, Inc. , the court recognized that, while parties traditionally could not deny a court its jurisdiction, the U.S. Supreme Court and the Third Circuit favored enforceability of forum selection clauses, and thus adopted the same rule. See 17 Cal.3d at 495, 131 Cal.Rptr. 374, 551 P.2d 1206.   Therefore, under Pennsylvania, New York and California law the Factoring Agreements' choice of law provisions are valid.

Finally, the clauses would be valid under the law of the Second Circuit. In the Second Circuit, a four-part test determines the interpretation and enforcement of forum selection clauses. The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement ... The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so ... Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause ... The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Phillips v. Audio Active Ltd. , 494 F.3d 378, 383–384 (2d Cir. 2007). If steps one through three are met, the clause is presumptively enforceable unless the challenging party can prove, in step four, that the presumption has been defeated. See id.

The <u>Phillips</u> test requires the Court to look to the parties' agreed-upon choice-of-law to interpret steps two and three. <u>See</u> 494 F.3d at 383–384. When any contractual ambiguities arise, the contract law of the state named in the choice-of-law provisions applies to resolve the ambiguities; otherwise, the Court may use its own rules. <u>See Martinez v. Bloomberg LP</u>, 740 F.3d 211, 217–18 (2d. Cir. 2014) (using English law to interpret part of contract that does not fall clearly into Step 3). Federal law applies to steps one and four. See id. ; see also <u>M/S Bremen v. Zapata Off–Shore Co.</u>, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (creating the "unreasonable or unjust" test). Under this test, for the reasons outlined below, the forum selection provisions are valid.  Plaintiffs' claims are based upon the contracts between the parties and thus any attempt at the application of California law should be dismissed by this Court.

**C.**     **<u>Complaint's General Failure under Fed. R. Civ. P. 9 (b)</u>**

Plaintiffs' Complaint does not allege the required elements related to allegations of a criminal enterprise, a possible class action, explicit or implicit allegations of fraudulent behavior or intent and falls far short of satisfying the particularity requirement of Fed. R. Civ. P. 9 (b). Whether or not the heightened pleading standard of Rule 9(b) applies, Plaintiffs have not plead circumstances constituting the alleged common enterprise with any detail whatsoever—let alone the particularity required by Rule 9(b).   Further, Plaintiffs have not plead that Defendant's activities are in anyway illegal.

Plaintiffs' allegations do not support their conclusions, nor are these allegations specific enough to satisfy either the Rule 8 or Rule 9(b) pleading burden.

**D.**     **<u>Equitable Claims (Mislabeled as "CONTRACT") in Complaint</u>**

Plaintiffs' Complaint seemingly argues for unjust enrichment or equitable relief under the "Fifth Cause of Action,"    In Pennsylvania, the elements of unjust enrichment are: (1) benefits conferred by Plaintiff on Defendant; (2) appreciation of the benefits by Defendant; and (3) acceptance and retention of such benefits under circumstances that would be inequitable for

10

defendant to retain the benefit without payment of value. <u>Styler v. Hugo</u>, 619 A.2d 347, 350 (Pa. 1993).   The Complaint does not allege any element needed to state a claim for unjust enrichment. Fundamentally, the Complaint fails to allege Plaintiffs conferred a benefit on Defendants. <u>Plaintiffs glaringly fail to produce any accounting or even copies of the pertinent contract which would show that more money was received by Plaintiffs than they allowed to ever be retrieved by Defendants</u>.

Further, unjust enrichment is a quasi-contract claim that provides relief based on a contract implied in law. <u>Sevast v. Kakouras</u>, 591 Pa. 44, 53 n.7 (Pa. 2007) ("An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law.").

Plaintiffs attempt to allege that certain Defendants are alter ego of one another, were involved in a "common enterprise," and failed to observe corporate formalities such that the veil of the corporate Defendants should be pierced. The alleged facts do not make clear which Defendants Plaintiffs believe acted as alter egos, let alone make any well pleaded allegations in support of its alter ego liability theory.   "Whether the corporate veil may be pierced is a question of state law." <u>Star Creations Inv. Co., Ltd. v. Allen Amron Development, Inc</u>., 1995 WL 495126, at *12 (E.D. Pa. Aug. 18, 1995). When the internal affairs of a corporate party are in question, Pennsylvania courts apply the law of the state of incorporation. <u>Panthera Rail Car, LLC v. Kasgro Rail Corp</u>., 2013 WL 4500468, at *6 (W.D. Pa. Aug. 21, 2013) (citing <u>Banjo Builders, Inc. v. Renosky</u>, 399 F.3d 168, 179 n.10 (3d Cir. 2005)).  Plaintiffs haves not stated a single fact, as opposed to conclusory labels, that would justify piercing the corporate veil.

**E.**      **Plaintiff Fail to State Any RICO Claims**

Plaintiffs utterly fail to allege the requisite facts to state a cognizable RICO claim. Despite Plaintiffs' best efforts to characterize these transactions as hidden loans and as sinister racketeering scheme, Plaintiffs' pleading fails to properly allege an enterprise, any wire or mail activity (much less any fraud), or any consequential harm or damages, particularly when applying the close

scrutiny which RICO claims demand.    Courts have repeatedly cautioned that '[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device.' Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)). Accordingly, 'Civil RICO should not be used to transform a 'garden variety fraud or breach of contract case[ ] ... into a vehicle for treble damages.''' Evercrete Corp. v. H Cap, Ltd., 429 F.Supp.2d 612, 622 (S.D.N.Y. 2006) (quoting Goldfine v. Sichenzia, 118 F.Supp.2d 392, 394 (S.D.N.Y. 2000)); Kirk v. Heppt, 423 F.Supp.2d 147, 149 (S.D.N.Y. 2006) (courts "must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing"). Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater New York, 2009 WL 928718, (E.D.N.Y., March 31, 2009).

Although civil RICO actions generally need not do more than meet the routine pleading requirements outlined above, courts are particularly mindful of these standards in the context of a civil RICO claim, the assertion of which often has "an almost inevitable stigmatizing effect on those named as defendants." World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 495-96 (S.D.N.Y. 2007) (internal quotation and citation omitted); see also Nichols v. Mahoney, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009)("A civil RICO lawsuit has vast implications for the defendants because of the specter of treble damages and the possibility of permanent reputational injury to defendants from the allegation that they are 'racketeers.'"). Because of this likely powerful effect on potentially innocent defendants who face the threat of treble damages, and the concomitant potential for abuse of RICO's potent provisions, the court is aware of a particular imperative in cases such as the one at bar, "to flush out frivolous [civil] RICO allegations at an early stage of the litigation." World Wrestling Entm't, 530 F. Supp. 2d at 496 (internal quotation and citation omitted).

Moreover, where, as here, a plaintiff alleges RICO predicate acts based upon fraudulent activities such as mail or wire fraud, a plaintiff must additionally satisfy the particularity

requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). See City of New York v. Smokes-Spirits.Com, Inc., 541 F.3d 425, 446 (2d Cir. 2008), rev'd on other grounds sub nom. Hemi Group, LLC v. City of New York, 130 S. Ct. 983 (2010) ("Allegations of mail or wire fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b)." (citation omitted)). The court will thus examine below the mail and wire fraud allegations in the context of Rule 9(b)'s particularity requirements.

In Plaintiffs' misguided Complaint appears propound the theory that any claim can be brought within RICO's ambit.   This is not the law and, as is described more fully below, Plaintiffs' Complaint does not satisfy any of the elements necessary to maintain a RICO claim.

1.    Elements of Civil RICO.

RICO provides a civil cause of action to "[a]ny person injured in his business or property by reason of violation of section 1962 of this chapter."  18 U.S.C. §1964(c).  Section 1962, which contains RICO's criminal provisions, makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §1962(c). With respect to civil RICO claims involving allegations of fraud arising out of loan agreements, the level of pleading specificity required in a complaint has   been clearly articulated.   To successfully state such a claim, a Plaintiff must allege: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. See Meade v. Guar. Bank, 2013 WL 5438750, *1 (M.D. Pa. Sept. 27, 2013) (dismissing RICO claims in context of fraudulent loan transactions); Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004).

Of these requirements, "the heart of any RICO complaint is the allegation of a pattern of racketeering." Agency Holding Corp. v. Malley Duff & Assoc., Inc., 483 U.S. 143 (1987); see also Bonavitacola Elec. Contr., Inc. v. Boro Dev., Inc., 87 Fed. Appx. 227, 230 (3d Cir. 2003). RICO defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering

activity" within a ten-year period. 18 U.S.C. § 1961(5). It is clear, however, that a "pattern" requires more than a mere recitation of multiple predicate acts. In order to prove a pattern of racketeering activity, "a Plaintiff or prosecutor must show that the racketeering predicates are related, **and** that they amount to or pose a threat of continued criminal activity." H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original).

The Supreme Court also emphasized that "continuity" is "centrally a temporal concept," and is "both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241-42. In order to establish "closed ended" continuity, a Plaintiff must show "a series of related predicates extending over a substantial period of time." Id. at 242.

Critically, even civil RICO requires proof of crimes, as "racketeering activity" is defined to include only those specific state and/or federal crimes, known as "predicate acts," set forth in 18 U.S.C. § 1961(1). Because Plaintiff fail to allege (1) an enterprise, (2) racketeering acts, (3) continuity, and (4) damages, his RICO claims must be dismissed.

2.      Plaintiff Has Not Alleged Any RICO Enterprise.

Plaintiffs' claims must be based on one of the three categories of prohibited activities which give rise to RICO liability. See 18 U.S.C. § 1962; Kolar v. Preferred Real Estate Investments, Inc., 2008 WL 2552860, * 3 (E.D. Pa. June 19, 2008). To allege a RICO claim under § 1962(c), a Plaintiff must allege that the "enterprise" is separate and distinct from the defendants themselves. See Lightning Lube v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991); Kolar, 2008 WL 2552860 at * 3. Under RICO, an "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Emcore Corp. v. PricewaterhouseCoopers LLP, 102 F. Supp. 2d 237, 255 (D.N.J. 2000) (citing 18 U.S.C. § 1961(4)).

14

An "association-in-fact" enterprise is proven by showing that: (1) there exists an ongoing organization, formal or informal; (2) the various associates of the organization function as a continuing unit; and (3) the organization has an existence separate and apart from the alleged pattern of racketeering activity.   Schwartz v.Lawyers Title Ins. Co., 2013 WL 4676704, at * 4 (E.D. Pa. Aug. 30, 2013) (citing U.S. v.Turkette, 452 U.S. 576, 583 (1981)).   "The conclusory naming of a string of entities does not adequately allege an enterprise." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir.2004).

However, for purposes of a civil RICO cause of action, a corporate entity cannot be both the person who conducts affairs of the enterprise and the enterprise itself. See Zimmer v. Gruntal & Co., Inc., 732 F. Supp. 1330 (W.D. Pa. 1989). "[I]f the members of the enterprise are the same as the persons, [§1962(c)'s] distinctness requirement has not been met, as the 'person' and the 'enterprise' must not be identical." Kolar, 2008 WL 2552860 at *4 (quoting Zavala v. Wal Mart Stores, Inc., 447 F. Supp.2d 379, 383 (D.N.J. 2006)).

Putting aside the other fatal flaws in his claims, Plaintiffs do not allege the existence of any RICO enterprise, much less one that is separate and distinct from Defendants itself. Plaintiffs fail to explain the enterprise's structure and the Defendants' role(s) in the purported enterprise. As a result, it is impossible to discern which potentially separate and distinct entities are responsible and how they are responsible for the phantom "enterprise."

The lone fact that Plaintiffs plead in support of the existence of any "enterprise" is that Complete Business Solutions Group, Inc., Fast Advance Funding and Broadway Advance are business entities which each participated in Merchant Cash Advance agreements with Plaintiffs. Such allegations, on their own, are woefully deficient and Plaintiffs do not suggest how Fast Advance Funding, Complete Business Solutions Group and Broadway Advance were somehow connected with each other in any "enterprise." They also fail to show how the Merchant Cash Advances in which these businesses entered or brokered became an "enterprise" distinct from said

business entities. As a result, Plaintiffs failed to meet 18 U.S.C. § 1962's distinctiveness requirement because the alleged RICO "persons" and the alleged "enterprise" are one and the same.

Moreover, several courts have held that a RICO enterprise cannot be based upon the provision of routine credit services (e.g., computer processing of purchases, collection of debts). See Jubelirer v. Mastercard Int'l, Inc., 68 F. Supp. 2d 1049, 1052-53 (W.D. Wisc. 1999); In re Mastercard Int'l, Inc., 132 F. Supp. 2d. 468, 487 (E.D. La. 2001). Plaintiff provides no facts to suggest how the Merchant Cash Advance industry and the purchase of account receivable are anything but routine business transactions. As a result, there is simply no "enterprise."

3.      Plaintiffs have Not Alleged Any Criminal Predicate Acts.

Predicate acts of racketeering activity are defined by 18 U.S.C. §1961. The Third Circuit has held that the list of predicate acts in §1961(1) is exhaustive. Annulli v. Panikkar, 200 F.3d 189, 200 (3d Cir. 1999). Therefore, in this context, any act in violation of a federal or state law not enumerated by §1961 does not constitute racketeering activity. The only allegedly criminal predicate acts that Plaintiffs attempts to set forth in his Complaint are mere legal conclusions based on unspecified violations of the federal mail and wire fraud statutes, 18 U.S.C. §§1341 and 1343. To establish a violation of those criminal statutes prohibiting any person from knowingly causing the use of the mails or wires "for the purpose of executing" any "scheme or artifice to defraud," Plaintiffs must prove: (1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of the United States mail or wire communications in furtherance of the fraudulent scheme. U.S. v. Pharis, 298 F.3d 228, 234 (3d Cir. 2002); U.S. v. Syme, 276 F.3d 131, 142 n.3 (3d Cir. 2002). The mail fraud statute applies only where the defendant uses the United States mail as "part of the execution" of a fraudulent scheme. Schmuck v. U.S., 489 U.S. 705, 710 (1989).

The wire fraud statute is "identical to the mail fraud statute except it speaks of

16

communications transmitted by wire" *i.e.* telephone, radio, or television, and does not apply to intrastate communications. U.S. v. Frey, 42 F.3d 795, 797 (3d Cir. 1994). The cases construing the mail fraud statute are applicable to the wire fraud statute as well. Id.

Plaintiffs utterly fail to allege with any particularity that Defendants sought to defraud Plaintiffs or acted with the intent to defraud.  To constitute fraud for purposes of RICO, the scheme or artifice to defraud "must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." Lum v. Bank of Am., 361 F.3d at 223. The statutory term "to defraud" signifies "the deprivation of something of value by trick, deceit, chicane or overreaching."  U.S. v. Al Hedaithy, 392 F.3d 580, 591 (3d Cir. 2004).   This requirement is particularly significant where the Plaintiffs attempt to establish a RICO claim based solely on mail or wire fraud:

> [A]t least some sort of deception or 'other deceptive practices' should be alleged in order to warrant the intrusion of the draconian civil RICO remedies of treble damages, forfeiture and attorney's fees in what would otherwise be an ordinary breach of contract claim.
>  Livingston v. Shore Slurry Seal, Inc., 98 F.Supp.2d 594, 600 (D.N.J. 2000).

"[B]ecause a Plaintiff is entitled [to] treble damages should he or she prevail in the lawsuit, litigants have often attempted to shoehorn 'garden variety' fraud or breach of contract claims into a RICO claim." Wilkinson Co. v. Krups N. Am., Inc., 1999 WL 33134349, *4 (D.N.J. Nov. 16, 1999); see also Goldfine v. Sichenzia, 118 F.Supp.2d 392, 399-400 (S.D.N.Y. 2000) ("RICO was not enacted for the purpose of providing a federal forum for nearly every conceivable contract action under State law.")

Plaintiffs asserting RICO violation must "at a minimum...allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.   Rule 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." The purpose of the requirement is "to place the Defendants on notice of the precise misconduct

with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Industrial Machinery Corp., 742 F.2d at 791;  see also Wright,  2007 WL 869167, *3 (Rule 9(b) "serves to put defendants on notice of the conduct complained  of by the Plaintiff to ensure that they are provided sufficient information to formulate a  defense").

Plaintiffs' complete failure to specify the identity of any person making any purported misrepresentation; the time, place and content of the alleged misrepresentation; and the method by which the misrepresentation was communicated and to whom belies the existence of any predicate act of mail or wire fraud and requires dismissal of his RICO claim.

4.      Plaintiffs Cannot Establish  Damages.

Finally, Plaintiffs haves not alleged what, if any damages, they suffered or whether Defendants' alleged RICO violations were the proximate cause of any damages suffered.    To invoke RICO's civil remedies, a plaintiff must have been "injured in his business or property by reason of a violation of Section 1962," 18 U.S.C. Section 1964(c). This statutory language has been construed to require a showing that the RICO violation at issue was a proximate cause of the Plaintiffs' injury. *See* Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 456–61, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006) (discussing necessity of proximate cause requirement due to difficulty of ascertaining damages caused by remote action); Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1344 (2d Cir.1994) ; Chevron Corp. v. Donziger, 974 F.Supp.2d 362, 601 (S.D.N.Y.2014).

"Along with the Article  III constitutional and prudential standing requirements,  Plaintiffs seeking recovery under RICO must satisfy the additional standing requirement of injury to property or business as a proximate result of the alleged pattern of racketeering activity." Meeks-Owens v. FDIC, 2009 WL  2513616, at *5 (M.D. Pa. Aug. 13, 2009).

The Third Circuit has explained that a RICO Plaintiff must make two threshold showings to have standing to assert a RICO claim: "(1) that the Plaintiff suffered an injury to business or property; and (2) that the Plaintiffs' injury was proximately caused by the Defendants' [RICO]

violation." Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000).   The first element is not

satisfied unless there are allegations of "concrete and financial loss." See Berk v. J.P. Morgan

Chase Bank, N.A., 2011 WL 4467746, at *5 (E.D. Pa. Sep. 26, 2011) (granting motion to dismiss

RICO claims where Plaintiff had failed plead any concrete out-of-pocket loss); Shipp v. Donaher,

2010 WL 1257972, at *10 (E.D. Pa. Mar. 25, 2010) (granting motion to dismiss RICO claim for

lack of standing and noting that "'a showing of injury requires proof of a concrete financial loss'").

The proximate cause element requires more than just an allegation of indirect  or tangential injury

suffered by the plaintiff. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 459-60 (2006) (holding

that motion to dismiss RICO claim was properly granted where the Plaintiff is unable to establish

the existence of an injury directly related to the alleged racketeering activity: "[t]here is no need to

broaden the universe of actionable harms to permit RICO suits by parties who have been injured

only indirectly").

Plaintiffs baldy assert that they suffered damages as a result of Defendants' alleged RICO

enterprise, but they fail to state what damages he has actually suffered as a result of Defendants'

actions. Additionally, Plaintiffs remain unable to show that Defendants committed a RICO

violation.   As Plaintiffs cannot establish any damages, their RICO claim must be dismissed.

**F.**     **Negligent Misrepresentation**

Plaintiffs' Seventh cause of action makes very general allegations concerning

misrepresentation made by Defendants without providing specific information regarding said

misrepresentation, who made them, there content, and of course without providing any supporting

exhibits or even referring to any documentation.     Plaintiff fail to state a claim for negligent

misrepresentation.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint must be dismissed in its entirety and

with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

Philadelphia, Pennsylvania   Respectfully submitted,

**Law Office of Norman M. Valz, P.C.**

_____
Norman M. Valz, Esq.– Attorney for Movants
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 1st day of March, 2018, I caused a true and correct copy of the foregoing Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and Supporting Memorandum of Law to be served upon the following:

*Via Electronic Mail and ECF*
Shane R. Heskin
Luke E. McDaniels
White & Williams, LLC
1650 Market Street
Suite 1800
Philadelphia, PA   19103

Respectfully submitted,
**Law Office of Norman M. Valz, P.C.**

_____
Norman M. Valz, Esq.– Attorney for Movants
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com